Royal Richardson & wife *vs.* Sarah S. Brackett, administratrix, & others.

B., the holder of a mortgage with the name of the mortgagee left blank, which had been intrusted to him for the purpose of negotiating it for the benefit of the mortgagor, agreed to sell it to C., and C. thereupon sent D. with B. to the house of the mortgagor to have the blank filled in with B.'s name, and the mortgage executed and acknowledged; the mortgage then to be assigned to C., and the price agreed upon to be paid to B. The blank was filled, and the mortgage executed and acknowledged, at the mortgagor's house; B. told D. that he did not wish to make the assignment there, because he did not wish the mortgagor to know that he had put the mortgage directly out of his hands. B. and D. accordingly went to another place, where the assignment was made to C. and the price paid to B., who never paid it to the mortgagor, but embezzled it. *Held*, that it was not a conclusion of law that C. had notice of B.'s fraud.

To a bill in equity to avoid a promissory note and mortgage alleged to have been made to the mortgagee for the purpose of being negotiated for the benefit of the mortgagor, and to have been fraudulently assigned by the mortgagee for his own benefit, the assignee answered that he purchased the note and mortgage in good faith from the mortgagee. At the hearing it appeared that the assignee gave less than their face for the note and mortgage, and the judge found that he advanced the money and took the assignment in good faith without notice of the fraud. *Held*, that the further fact, found by the judge, that the transaction between the mortgagor and the assignee was a usurious loan, did not render the mortgage void in the hands of the latter, it not appearing that he supposed that he was making a loan. *Held, also*, that a refusal to decree the mortgage void, in the hands of the assignee, was justified by the pleadings and evidence.

A bill in equity, against B.'s administratrix and C., alleged that the plaintiff executed a promissory note and mortgage to B. for him to negotiate and pay the proceeds to the plaintiff, but that B. fraudulently indorsed the note and assigned the mortgage to C., who was a party to the fraud; and prayed that the note and mortgage might be declared void, but did not pray for any relief against the estate of B., who had died. On the hearing,

*Held,* that, as one of the parties to the contract was dead, the plaintiff was an incompetent witness under the Gen. Sts. *c.* 131, § 14.

On the hearing of a bill in equity to avoid a mortgage alleged to have been assigned by the mortgagee in fraud of the mortgagor, evidence of similar transactions, alleged to be fraudulent, between the mortgagee and the person who acted as agent of the assignee, is inadmissible, if it does not appear that such transactions were near the time of the assignment in question, or so related thereto as to form part of one fraudulent transaction, or are adapted to illustrate the intent.

BILL IN EQUITY by Royal Richardson and Mary M. Richardson, his wife, against Sarah S. Brackett, (as administratrix of the estate of Henry Brackett,) Samuel P. Whitman, William D. A. Whitman and Albert S. Pratt.

The bill alleged that the plaintiffs, desiring to raise money, were induced, by the false and fraudulent representations of Henry Brackett, to execute to him a mortgage for $1500 of an estate in Cambridge owned by Mrs. Richardson, and to intrust the mortgage and the mortgage note, which was payable to his order, to him, for the purpose of his negotiating them to a savings bank, and on his promise to pay the proceeds over to the plaintiffs; that nothing was ever paid to them; that Brackett really procured the mortgage to be made to him by the plaintiffs at the instigation of William D. A. Whitman, and for the purpose of its being assigned to some person whom said Whitman should name, in discharge of certain pretended claims of said Whitman against Brackett; that Brackett, accordingly, fraudulently assigned the mortgage and mortgage note to Samuel P. Whitman, and no consideration therefor, except the discharge of said pretended claims, was ever given to Brackett, or to the plaintiffs; that William D. A. Whitman and Samuel P. Whitman, at the time of the assignment, were both fully cognizant of Brackett's fraud, and well knew that he had paid no consideration for the mortgage and note; that Samuel P. Whitman conveyed the mortgaged estate to Pratt by a deed purporting to be made under a power of sale in the mortgage deed; and that such conveyance was void, for reasons set forth in the bill, but not material to be stated for the purposes of this report.

The prayer was, that Pratt and Samuel P. Whitman might be ordered to convey and assign to Mrs. Richardson the land mortgage and mortgage note, and that the mortgage, the mort-

gage note, the assignment to Samuel P. Whitman and the conveyance to Pratt, might be decreed to be void and of no effect. No relief was prayed for against the estate of Brackett, who had died insolvent.

Samuel P. Whitman, in his answer, admitted that the mortgage and mortgage note were assigned to him, but denied that he was cognizant of any fraud on the part of Brackett or of William D. A. Whitman, or that any part of the proceeds of the mortgage was applied to his use, or that the mortgage was assigned to him in settlement and discharge of any claims of William D. A. Whitman against Brackett, or that William D. A. Whitman was agent for him in any manner concerning the mortgage; and alleged that, having been informed that Brackett had the mortgage for sale, he was induced to buy it after an examination of the title and the property; that he bought the mortgage in good faith; that he paid " a full, complete and adequate consideration " therefor and " all that said mortgage was worth ; " and that he was ignorant of the transactions, representations, statements and doings of Brackett with the plaintiffs, the purpose for which Brackett received the mortgage and note, and whether Brackett intended to endeavor to obtain a loan for the benefit of the plaintiffs.

William D. A. Whitman, who was the son of Samuel P. Whitman, in his answer, denied that he was in any way cognizant of any fraud on Brackett's part, or that the mortgage was assigned to Samuel P. Whitman in consideration of the settlement and discharge of any claims due to himself; " that he ever had any knowledge, information or belief, except by the plaintiffs' bill, that Brackett had not a good and valid title and interest, in law and equity, in and to the mortgage and note, or that the same were not given to Brackett for a good and valuable consideration, or that Brackett obtained the same by any undue means or fraudulent representations, or that Brackett had not a good and perfect and moral right to sell and dispose of said mortgage and note, in any way, and for his own benefit and to his own individual use ; " and alleged that the mortgage was assigned and sold to Samuel P. Whitman for the consideration

of twelve hundred dollars, which were paid to Brackett, one thousand dollars being paid by Samuel P. Whitman, and the remaining two hundred dollars being furnished by William D. A. Whitman for Samuel P. Whitman.

The case was heard before *Foster,* J., who reserved it for the determination of the full court, on a report of which the following is all that is now material ; and for " such disposition to be made of the case as equity requires."

" I found the following facts : The plaintiffs, desiring to raise money upon a mortgage of an estate in Cambridge, owned by Mrs. Richardson, executed the mortgage deed and note to Henry Brackett, who was a broker, and placed them in his hands for negotiation, upon the undertaking on his part to pay over the proceeds to them. It did not appear whether Brackett had or had not authority to raise the money at a usurious rate of inter-est. He induced the plaintiffs to place the mortgage and note in his hands by false and fraudulent representations, and with the intention, from the beginning, to appropriate the proceeds to his own use; and both mortgage and note, while in Brackett's hands, were null and void.

" This being so, I held, as matter of law, that under these circumstances it was incumbent upon the defendant, Samuel P. Whitman, the assignee of the mortgage and note, to show that he took them, *bonâ fide,* for a valuable consideration, and without notice of Brackett's fraud. Upon this question I found the following facts : The mortgage was at first executed with the name of the grantee in blank, and in this condition was carried by Brackett to William D. A. Whitman, who advanced upon it two hundred dollars, which Brackett paid over to the plaintiffs , and, after some delay, it was agreed that Samuel P. Whitman should buy it for twelve hundred dollars, in all, and the two hundred dollars should be reckoned as a part thereof. This agreement was made between Brackett and William D. A. Whitman, who acted as his father's agent in the premises, with full authority over all matters relating to this loan. Samuel P Whitman did advance, in cash, one thousand dollars, which were given to one Blackmar, a student at law, in the office of William

D. A. Whitman, with directions to go with Brackett to the house of the plaintiffs, and there have the blank left for the name of the grantee filled with Brackett's name, and the mortgage duly executed and acknowledged.    The mortgage was then to be assigned by Brackett to Samuel P. Whitman, and thereupon the thousand dollars paid over.    All this was done; but, while at the plaintiffs' house, Brackett told Blackmar he did not want to make the assignment then, because he did not wish the plaintiffs to know that he had put the mortgage directly out of his hands.    Accordingly the assignment was made, and the thousand dollars were paid by Blackmar to Brackett at another place in Cambridge after they had left the plaintiffs' house.    Brackett embezzled this money, and no part of it was ever paid over to the plaintiffs.    Brackett never informed them what he did with the mortgage, and they learned it from other sources.

" The plaintiffs insisted that these facts showed notice to Blackmar which should have put him on his guard against the fraud of Brackett; and that Blackmar was so far Whitman's agent, that notice to Blackmar was notice to Whitman.    I found as a fact that the transaction between Samuel P. Whitman and the plaintiffs was a usurious loan.    The plaintiffs insisted that the proposal and agreement for usury, as well as its amount, were also notice to Samuel P. Whitman, which should have put him on inquiry as to Brackett's authority and purposes; and that, under these circumstances taken altogether, he could not be regarded as a *bonâ fide* holder for value of the note or mortgage.    On these points I ruled against the plaintiffs, and found that Samuel P. Whitman did, in good faith, and without notice of any existing or meditated fraud, advance the money and take the assignment.    But I reserved for the full court the question whether, under all the circumstances above stated, Samuel P Whitman was to be regarded as a *bonâ fide* holder of the mortgage and note, as having paid value for them without notice of the fraudulent character of the transaction.

" I ruled that the plaintiffs were not entitled to a decree adjudging the mortgage void, and directing it to be cancelled. The bill contained no prayer to redeem; and I ruled that the

plaintiffs were entitled to a decree setting aside and vacating the sale under the power in the mortgage, and to a release from Pratt. The defendants did not appeal from this decree, and the facts bearing upon this portion of the case are not reported.

"Against the objection of the plaintiffs, I excluded them, as incompetent witnesses for all purposes. They offered evidence of the intimacy between Brackett and William D. A. Whitman, and of their being engaged in business transactions together, which I admitted. But I excluded evidence of the particulars of other transactions between them, of a similar nature with the present, and alleged to be fraudulent; which was offered to show that William D. A. Whitman was a participant in Brackett's fraud in this case, because he had been in other like cases with other parties, and that for the same reason he had probable notice of Brackett's fraud. To these rulings on evidence the plaintiffs took exceptions, which are reserved, so far as they are material."

*S. Snow*, for the plaintiffs.

*A. A. Ranney*, for Samuel P. Whitman.

COLT, J. The bill is brought to set aside a mortgage deed and note, and assignment thereof to the defendant, Samuel P. Whitman, as void for fraud. It charges, in substance, that Henry Brackett, (the intestate of the defendant, Sarah S. Brackett,) to whose order the note was made payable, fraudulently obtained the same under the pretence of obtaining the money from a third party; that both note and mortgage were intrusted to him for that purpose, and nothing was ever paid to the plaintiffs; that the assignment to Samuel P. Whitman was without consideration paid either to the plaintiffs or to Brackett; and that said Whitman well knew that Brackett had never paid any consideration therefor. There are other features in the bill to which it is not necessary to allude.

The answer of Samuel P. Whitman asserts his ignorance of the purpose for which Brackett received the note and mortgage, and of all fraud on his part, denies all fraud on his own part, and says that he paid a full consideration, upon being informed

that Brackett had this mortgage for sale, after an examination of the title and the property, from which he was induced to buy it; that the same was bought in good faith; and that, if there was fraud in the premises, he was ignorant thereof.

At the hearing before a single judge, it was found as a fact, that Brackett obtained the note and mortgage by fraud, and that while in his hands they were void. And it was held, as a matter of law, that it was incumbent on Samuel P. Whitman, as assignee of the same, to show that he took them in good faith, for a valuable consideration, and without notice. Upon this point the main contest was had. Certain facts are reported as found by the judge, and among them the fact that the transaction between Samuel P. Whitman and the plaintiffs was a usurious loan.

The plaintiffs insisted that the facts found were equivalent to notice to the assignee of Brackett's fraud, so that he could not be regarded as a *bonâ fide* holder for value. The judge declined so to rule, and found as a fact that Whitman did, in good faith, without notice, advance his money, and take the assignment. And this finding is not open to revision now, unless, as a matter of law, upon the facts reported, the court can see that it is erroneous, or that it was not open to the judge to come to the result reached by him, under the pleadings in the case.

We cannot see any error in the findings or rulings reported. Independently of the usurious nature of the transaction, there is nothing unusual in the facts stated, and nothing to show that the assignee had any knowledge of the fraudulent designs of any one, or that the circumstances were such as to affect him with notice. And in regard to the matter of usury, upon an examination of the facts reported, nothing appears to show that, in point of fact, Samuel P. Whitman at the time of the transaction supposed he was making a loan, or that the transaction was usurious, or different from what he alleges it to have been in his answer. Its character as a usurious loan is rather a legal consequence, growing out of the facts found and the application of the old doctrine, that, if one employed a third person to sell a note for him for less than its face, the transaction was usuri-

ous under the statute, although the purchaser supposed that he was merely purchasing the note in the market, and did not know that the seller was acting only as agent. *Sylvester* v. *Swan,* 5 Allen, 134. This usurious character, thus given to the transaction, carries with it the penalty which the law attaches, but nothing more. It does not serve to subject the holder of the mortgage to the greater loss which would follow if it took away his character as an innocent holder without notice.

It remains to consider whether the findings of the judge are inconsistent with the allegations in the answer. The invariable and universal rule in equity proceedings requires that the final decree of the court should be founded on some matter put in issue between the parties by the bill and answer. The parties have a right to know in advance, by the pleadings, what is to be the subject matter of inquiry, so as to be prepared with evidence to meet the issue. The substance of the plaintiffs' objection now is, that the answer of the assignee sets out a purchase of the mortgage from Brackett, whereas the judge has found it to be a usurious loan. This objection does not appear to have been made at the hearing; but perhaps it is not to be regarded as therefore waived. It could not be regarded as waived in a case where it was not to be presumed in advance that testimony to a point not in issue would be regarded by the court in making its decree. But however this may be, we cannot see how the plaintiffs are prejudiced. The character given to the transaction by the judge, as before stated, is rather a legal inference from the facts. It is favorable, rather than otherwise, to the plaintiffs. The question might be more difficult, as it would be quite different, if the defendants were objecting that no such case is stated in the bill. No decree was ordered based upon this finding; but the ruling was, that the plaintiffs were not entitled to a decree adjudging the mortgage void in the hands of Samuel P. Whitman.

Most of the exceptions relating to the admission and rejection of evidence become immaterial by the finding of the judge in the plaintiffs' favor in the matter of the fraud in the original transaction; and of the remaining, only two were relied on in

argument. In reference to the refusal to admit the plaintiffs as competent witnesses under the Gen. Sts. *c.* 131, § 14, it is to be noted that no decree is sought against the administratrix of Brackett, who is made a defendant; that the only real parties in interest are the plaintiffs and Samuel P. Whitman; that the defendants are not joint parties; and that, as the issue was presented and tried, it was an attempt to impeach the validity of a contract, made with a person since deceased, in the form of a note payable to his order, secured by mortgage, and indorsed to Samuel P. Whitman. It is a case, therefore, where one of the parties to the contract is dead, and the other party, who is also a party to the record, by the provision of the statute is excluded. *Hubbard* v. *Chapin,* 2 Allen, 328. *Smith* v. *Smith,* 1 Allen, 231. *Byrne* v. *McDonald,* Ib. 293. Nor was the evidence offered, of other similar transactions between Brackett and William D. A. Whitman with other persons, competent, within the rule stated in *Lynde* v. *McGregor,* 13 Allen, 178. It does not appear that these transactions were contemporaneous, or near the time of the principal transaction, or so related to it as to be fairly considered as parts of one scheme of fraud, or as calculated to illustrate the intent. To admit it would be to multiply collateral issues, without aiding in determining the real question.

The result is, that the plaintiffs are entitled to no decree further than was ordered by the single judge.